## PENN v. PENN.

Court of Appeals of Kentucky.

March 12, 1954.

Rehearing Denied May 7, 1954.

———◆———

.Paul E. Tierney and James M. Honaker, Frankfort, for appellant. .

William A. Young, Frankfort, for appellee.

DUNCAN, Justice.

This appeal challenges an order granting custody of Suzanne Penn, now seven years. of age, to her. father. on ·alternate week ends. A series of prior and subse-quent orders are incidentally involved, which we state chronologically.

The parties to the appeal were married in June, 1945, and were divorced on May 6, 1947. The judgment granted to the mother, the appellant here, the custody of their daughter, Suzanne, who was nine months of age at the time of the divorce. The judgment authorized visitation by the father but contained no provision permitting him to assume partial custody of the child. On November 15, 1947, the father filed a written motion for partial custody, and the motion was overruled. The motion was renewed on February 8, 1948, but the Chancellor refused to modify the original order because of the tender age of the child. No further steps were taken until September 10, 1951, following Suzanne's fifth birthday.

On September 10, 1951, hearing on a third motion was held. At that time, both parties were present in person and by counsel, and the Chancellor discussed the matter informally with the parties and their attorneys. We gather from the briefs that evidence was heard, but it was not reported and no transcript of that proceeding is before us. Following the hearing, an order was entered providing that appellee be permitted to have custody of the child on alternate week ends from 2:00·p. m., on Friday, to 6:00 p. m., on the following Sunday.

On Saturday following the entry of this order, appellee called at the home of appellant for the purpose of taking Suzanne to his home. The child resisted her father's efforts and began crying and screaming. She finally became practically hysterical and a physician was called, who administered a sedative. In view of the child's state of anxiety, the father relinquished his right to take her on that occasion. On September 24, a motion was made to vacate the order of September 10, and on September 28, an order was entered modifying the earlier order, for the month of October only, but providing that for that month the child should be taken to the home of the father on alter-

nate week ends by the mother or some member of her family for visits of not exceeding five hours. Following the entry of this order, the child was taken to her father's home but could not be persuaded to get out of the car. Again, on October 22, she was taken to her father's home by her two maternal aunts, but refused to leave the car. The mother and members of her family testified that following each of these attempted visits Suzanne became highly emotional and it was necessary to call a physician to attend her.

In November, 1951, the order of September 10 again became automatically effective, and another unsuccessful attempt was made by appellee to take the child to his home. A highly emotional scene occurred at this time and a physician was again called. On November 17, 1951, appellant moved the court to set aside the partial custody order on the ground that the child's health would be adversely affected by compliance with its terms. An order was then entered giving each of the parties a period of three weeks to adduce medical proof as to the probable effect upon the child's mental and physical health by being required to spend alternate week ends with her father.

The proof for appellant goes far beyond the limitations of the latter order. It revives the ghosts of the marital difficulties of the parties preceding the divorce and relates in some detail the conduct of the appellee prior to the separation in 1947. The only medical testimony in support of the contention that the child's mental or physical health would be adversely affected by visiting with her father is the deposition of Dr. Charles McKinlay, a practicing pediatrician, of Lexington, Kentucky. Dr. McKinlay testified that his examination revealed that Suzanne's physical condition was good but she was inclined to be nervous and apprehensive. In response to a hypothetical question, he stated that if she resented going to her father's home, being required to do so might result in such emotional upset as to leave her personality permanently affected.

Appellant also introduced Dr. Graham B. Dimmock, who is not a physician but a clinical psychologist and director of the Lexington Child Guidance Service. This witness describes Suzanne as a precocious child, with a sensitive personality which is vulnerable to emotional stimulation. He stated that forcing her to accompany her father might incite fear, timidity, and permanent inhibitions, resulting in a distortion of her personality.

Appellee introduced Dr. H. Halbert Leet, a physician and psychiatrist, of Lexington, Kentucky, who interviewed Suzanne in his office at a time when she was accompanied by her maternal aunt. Dr. Leet testified that the child was alert and intelligent and he found no physical or neurotic abnormality. He stated that while he was making the examination the aunt made several critical and derogatory remarks about the father in the presence of the child, and it was apparent that these remarks caused an emotional reaction. Although Dr. Leet did not interview the mother, he expressed the positive opinion, based upon his conversation with the child and the conduct and statements of the aunt in her presence, that Suzanne's mind was being systematically poisoned against her father, and that her fears and emotional attitude toward him were largely cultivated by the adults with whom she associated. He stated that in his opinion no injury, mental or physical, would be sustained by visiting her father and that it would be to her disadvantage not to permit her to do so. He said that some damage, due to the conflict between the parents, had already been done, and unless it is remedied there might be a permanent emotional involvement.

Upon this testimony, the Chancellor overruled the motion to vacate the order of September 10, 1951, and granted an appeal to this Court. Appellant superseded the judgment and the partial custody order has been stayed pending the appeal.

As we view the issues, no question is presented concerning the fitness of the parties as custodians of this child. In-

herent in the September 10 order is a finding that the father is suitable to have partial custody of his daughter. The evidence introduced on the hearing at which the order was entered is not before us, and we must presume that it was sufficient to support the action of the Chancellor. Owens v. Childress, 189 Ky. 676, 225 S.W. 487; Dalton v. Dalton, 146 Ky. 18, 141 S.W. 371. Appellee has remarried and has a child by his second marriage, and there is nothing in the record to suggest that the environment of his home is less suitable than the home of the mother. We think the sole question is whether or not the physical or mental health of the child would be adversely affected by a compliance with the order.

It is quite apparent from this record that Suzanne has developed a marked antipathy toward her father. The feeling seems to have developed since the entry of the partial custody order. Before that time, appellee regularly visited his daughter, and would take her small gifts on these occasions. It appears that her feelings toward her father were as affectionate as the circumstances would permit until the controversy arose concerning the right to her partial custody. The feeling is unnatural on the part of a child of her age and is certainly not the result of any conduct on the part of her father during his first marriage because she was only six months of age at the time of the separation. The only explanation for her attitude, and one which is fully supported by the testimony of Dr. Leet, is that this feeling toward her father has been recently created by the adult members of her mother's family. We think it is a fair assumption from the record that the conduct and statements of the maternal aunt in the presence of Dr. Leet reflect the general attitude of the mother and her family toward appellee. Under these circumstances, it is not surprising that the child has developed a sense of loathing and fear toward her father.

We do not think the mother or the members of her family would knowingly do or say anything which would interfere with the normal emotional development of this child. If the parties could forget their personal difficulties and cooperate in an effort to acclimate Suzanne to the idea of spending certain days with her father, we believe that she would soon become accustomed to it and perfectly satisfied with the arrangement. So long as her present feeling is cultivated and encouraged, she will be the principal sufferer.

We have often written that we will not interfere with the Chancellor's award of custody of children in a divorce action, or subsequent thereto, unless there is a manifest abuse of judicial discretion. Where there is no more than a doubt as to the correctness or propriety of the Chancellor's conclusions respecting the custody of infant children, this Court has consistently affirmed the Chancellor's decision.

From the testimony before us, we have no trouble in concluding that the mental or physical health of the child would not be endangered by spending alternate week ends with her father, providing her parents and the other adults with whom she associates make an earnest effort to change her present attitude. We have no means of controlling their conduct, but we trust their love for the child will dictate such a course.

Since we find ourselves in complete agreement with the views of the Chancellor, the judgment of the lower court is affirmed.